# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs April 4, 2016

# IN RE JIMMY B., JR

**Appeal from the Juvenile Court for Sevier County**
**No. 150006000     Jeffrey D. Rader, Judge**

_____

**No. E2015-02070-COA-R3-PT**
**FILED-MAY 11, 2016**

_____

This is a termination of parental rights case. In May 2015, the Tennessee Department of Children's Services ("DCS") filed a petition in Sevier County Juvenile Court seeking to terminate the parental rights of the child's father. The juvenile court found by clear and convincing evidence that termination was appropriate on the following grounds: (1) abandonment by willful failure to support; (2) severe child abuse; and (3) persistence of conditions. The juvenile court also found by clear and convincing evidence that termination was in the child's best interests. Father appealed. We hold that the record does not contain clear and convincing evidence to support termination on the grounds of abandonment for willful failure to support and persistence of conditions, and we reverse as to those grounds for termination. However, we affirm the juvenile court's findings with respect to severe child abuse. We also affirm the juvenile court's finding that termination is in the child's best interest. Because the record contains clear and convincing evidence to establish one ground for termination and that termination is in the child's best interests, we affirm the juvenile court's termination of Father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed in Part, Affirmed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Jimmy B.

Robert L. Huddleston, Maryville, Tennessee, guardian ad litem.

Herbert H. Slatery, III, Attorney General and Reporter; Meghan Murphy, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

## OPINION

### I. BACKGROUND AND PROCEDURAL HISTORY

The child at issue in this case, Jimmy B., Jr. ("Jimmy" or "the child"),[1] was born to Tabitha H. ("Mother") and Jimmy B. ("Father") on May 13, 2013 in Sevierville, Tennessee. In June 2013, DCS took Jimmy into protective custody for the first time after Mother suffered an accidental drug overdose. Mother admitted that she and Father were using intravenous drugs and stealing prescription pain pills from Father's mother at the time. However, both parents completed alcohol and drug assessments and parenting classes, and Jimmy was returned to their custody in March 2014.

Jimmy's return to Mother and Father's custody did not last long. In September 2014, DCS again petitioned the juvenile court for protective custody of the child. The petition alleged that Mother and Father started using drugs again and had stolen 50 to 60 Hydrocodone and 80 to 90 Xanax pills from Father's mother on September 21, 2014. The petition further alleged that Mother and Father ingested several of the pills and were arrested and charged with driving under the influence later that day with Jimmy in the car. The juvenile court granted the petition, and Jimmy was placed in protective custody pending a hearing. The juvenile court appointed counsel for each parent and a guardian ad litem to represent Jimmy's best interests in the proceedings.

At a preliminary hearing on October 1, 2014, both parents stipulated that probable cause existed to sustain Jimmy's removal. The juvenile court ordered both Mother and Father to pay child support in the amount of $50 per month and explained to each that failure to do so could result in a termination of parental rights. Jimmy has remained in foster care since that time.

The juvenile court conducted an adjudicatory hearing on December 10, 2014. Although neither parent was present at the hearing, each was represented by their attorney. Following the hearing, the juvenile court entered an order finding Jimmy

---

[1] In termination of parental rights cases, it is the policy of this Court to redact the names of minor children and related individuals in order to protect their anonymity.

dependent and neglected and ordering that he remain in foster care. Notably, the juvenile court also found that both Mother and Father committed severe child abuse against Jimmy as defined in Tennessee Code Annotated section 37-1-102(b)(21).[2] Specifically, the juvenile court's order stated, "Father drove under the influence and placed the child in imminent and likely risk of great bodily harm or death. Mother failed to protect."

On May 8, 2015, DCS filed a petition for termination of parental rights. The petition noted that Jimmy had previously been adjudicated dependent and neglected and severely abused and alleged three statutory grounds for terminating Mother and Father's parental rights. The petition also alleged that it would be in Jimmy's best interest to terminate Mother and Father's parental rights. Once again, the juvenile court appointed counsel for both parents and a guardian ad litem to represent Jimmy's best interests.

A hearing on the petition was conducted on September 8, 2015. Father did not attend.[3] The juvenile court heard testimony from Mother, two DCS caseworkers, and Jimmy's foster mother. On September 21, 2015, the juvenile court entered a final order in which it found that clear and convincing evidence supported termination of Father's parental rights for abandonment by willful failure to support, severe child abuse, and persistence of conditions. The juvenile court also found that clear and convincing evidence supported termination of Mother's parental rights on multiple grounds. Finally, the juvenile court found that termination was in Jimmy's best interest and, as such, ordered that Mother's and Father's parental rights be terminated.

Father filed a timely notice of appeal. Mother also filed a timely notice of appeal but later sought a voluntary dismissal citing a change of heart. We are therefore concerned only with those issues related to the termination of Father's parental rights on appeal.

## II. ISSUES PRESENTED

Father presents the following issues for review on appeal, slightly reworded:

---

[2] The juvenile court's order cites Section 37-1-102(b)(23). This section has since been recodified at Section 37-1-102(b)(21). *See* 2014 Pub. Acts, Ch. 711, § 1, eff. July 1, 2014. For purposes of this appeal, we cite the current definition of "severe child abuse" found in Section 37-1-102(b)(21).

[3] The hearing was originally scheduled for September 2, 2015. At the outset of the proceedings on that date, however, Father's counsel made an oral motion to continue indicating that Father needed to go to the hospital because he was spitting up blood. The court granted the motion and rescheduled the hearing for September 8, 2015. When Father was not present at the outset of the September 8, 2015 hearing, his counsel sought a second continuance indicating that, although he had not been able to contact Father, he was informed that Father was once again in the hospital spitting up blood. The juvenile court denied the motion for a second continuance and proceeded with the hearing as scheduled.

1. Whether the record contains clear and convincing evidence to support termination of Father's parental rights based on (1) abandonment by willful failure to support, (2) severe child abuse, and (3) persistence of conditions.

2. Whether the record contains clear and convincing evidence to support the juvenile court's finding that termination of Father's parental rights is in the child's best interest.

## III. DISCUSSION

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions." *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993)); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005). Although a parent's right is fundamental and superior to the claims of other persons and the government, it is not absolute. *In re J.C.D.*, 254 S.W.3d at 437. A parent's right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *Id.*; *see also In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In Tennessee, proceedings to terminate parental rights are governed by statute. A party seeking to terminate parental rights must prove two things. First, the party must prove the existence of at least one of the statutory grounds for termination.[4] Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d 240, 251 (Tenn. 2010). Second, the party must prove that terminating parental rights is in the child's best interests.[5] Tenn. Code Ann. § 36-1-113(c)(2); *In re Angela E.*, 303 S.W.3d at 251. In light of the fundamental rights at stake in a termination proceeding, the grounds for termination and best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1); *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d at 653.

---

[4] The statutory grounds for terminating parental rights are listed in Tennessee Code Annotated section 36-1-113(g). The petitioner needs only to establish the existence of one of the statutory grounds to support a termination. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

[5] The factors to be considered in a "best interests" analysis are listed in Tennessee Code Annotated section 36-1-113(i).

In light of the heightened burden of proof in parental termination cases, a reviewing court must modify the customary standard of review set forth in Tennessee Rule of Appellate Procedure 13(d). First, we review the trial court's specific factual findings de novo with a presumption of correctness unless the evidence in the record preponderates otherwise. Tenn. R. App. P. 13(d); *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013). Second, we must determine whether the facts, as found by the lower court or as supported by a preponderance of the evidence, amount to clear and convincing evidence that the elements necessary to terminate parental rights have been established. *In re Taylor B.W.*, 397 S.W.3d at 112; *In re Bernard T.*, 319 S.W.3d at 596-97. Whether the facts are sufficient to support termination of parental rights is a conclusion of law, which we review de novo with no presumption of correctness. *In re R.L.F.*, 278 S.W.3d 305, 312 (Tenn. Ct. App. 2008), *overruled on other grounds by In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015); *see also In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (citing *In re Valentine*, 79 S.W.3d at 548). To the extent that resolution of an issue depends on the weight given to witness testimony, we will not re-evaluate the juvenile court's credibility assessment absent clear and convincing evidence to the contrary. *In re M.A.R.*, 183 S.W.3d 652, 661 (Tenn. Ct. App. 2005) (citing *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999)).

## GROUNDS FOR TERMINATION

Clear and convincing evidence of any one of the twelve statutory grounds for termination of parental rights listed in Tennessee Code Annotated section 36-1-113(g) is sufficient to support an order terminating parental rights where termination is in the best interests of the child. *In re Audrey S.*, 182 S.W.3d at 862. Nevertheless, this Court must consider the sufficiency of the lower court's findings with regard to each ground for termination and as to whether termination is in the child's best interests regardless of whether the parent challenges these findings on appeal. *In re Carrington H.*, No. M2014-00453-SC-R11-PT, 2016 WL 819593, at *13, --- S.W.3d ---- (Tenn. Jan. 29, 2016). The juvenile court relied on three statutory grounds in terminating Father's parental rights: (1) abandonment by willful failure to support, (2) severe child abuse, and (3) persistence of conditions. *See* Tenn. Code Ann. § 36-1-113(g)(1), (3), (4). We will address the sufficiency of the juvenile court's findings with regard to each.

### *Abandonment by Willful Failure to Support*

The first ground for termination listed in the termination statute is abandonment. Tenn. Code Ann. § 36-1-113(g)(1). For purposes of terminating parental rights, there are five alternative definitions of abandonment listed in Tennessee Code Annotated section 36-1-102(1)(A). Under the first statutory definition, "abandonment" means:

- 5 -

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(i). "Abandonment can be established by showing that a parent *either* willfully failed to visit *or* willfully failed to support the child during the relevant time period." *In re Saliace P.*, No. W2015-01191-COA-R3-PT, 2016 WL 304543, at *4 (Tenn. Ct. App. Jan. 26, 2016) (quoting *In re Christopher M.*, No. W2010-01410-COA-R3-PT, 2010 WL 4273822, at *10 (Tenn. Ct. App. Nov. 1, 2010)). This case only involves allegations of willful failure to support.

The juvenile court made the following findings in its order with regard to Father's abandonment by willful failure to support:

The Court finds that [Father] has abandoned the child, [Jimmy], in that the father did not support [him] in the four (4) months immediately prior to the filing of the petition. He was the subject of "show cause;" i.e. contempt proceedings and this Honorable Court had ordered him to make payments as far back as October, 2014. He made two small payments in the month of May, 2015 with the first payment made the same day that DCS filed its Petition to Terminate Parental Rights. Although father was incarcerated after DCS filed its Petition, there is nothing to indicate that he had some barrier or impediment to making support payments in the preceding months. His payments were not made in the four months prior to the filing of the TPR though. He was aware of his duty to support and the consequences of failure to support. Father signed the criteria and procedures for termination of parental rights and this Honorable Court explained his duty to him on October 1, 2014. By clear and convincing evidence, the requirements of Tenn. Code § 36-1-113(g)(1) and § 36-1-102(1)(A)(i) have been met for Abandonment for failure to support.

The record supports the juvenile court's finding that Father failed to support Jimmy in the relevant time period. A parent's failure to support "or make reasonable payments or make reasonable payments toward the support of the child must have occurred in the four months immediately preceding the filing of the termination petition currently before the court." *In re Alysia S.*, 460 S.W.3d 536, 565 (Tenn. Ct. App. 2014) (citing *In re D.L.B.*, 118 S.W.3d 360, 366 (Tenn. 2003)). In this case, the juvenile court

explained Father's duty to support Jimmy and the consequences of his failure to do so to Father during a preliminary dependency and neglect hearing in October 2014. Nevertheless, Father did not make a single child support payment until May 8, 2015, the same day the petition to terminate parental rights was filed.[6]  This Court has held that a child support payment made on the same day that a petition to terminate parental rights is filed does not constitute support within the relevant four-month window.  *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) ("In our view, a more reasonable construction is that the applicable four month window for determining whether child support has been paid in the context of the ground of willful failure to support includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed.  In other words, the last day of the four month period is the day before the petition is filed.").  Father does not present any argument to the contrary, and we see no reason to depart from that rule in this case.  The record clearly demonstrates that Father did not pay child support during the relevant four-month period.  The pivotal issue on appeal is whether his failure to do so was willful.

The element of willfulness is essential to the determination of abandonment.  *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005).  In the context of a termination proceeding, willfulness does not require the same standard of culpability as is required by the penal code, nor does it require that the parent acted with malice or ill will.  *In re Audrey S.*, 182 S.W.3d at 863.  Rather, it requires only that the parent's conduct consist of intentional or voluntary acts, or failures to act, rather than accidental or inadvertent acts.  *Id*.  To prove abandonment, the petitioner must establish by clear and convincing evidence that the parent who failed to support had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so.  *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013).

In this case, we do not find evidence in the record that Father had the capacity to support Jimmy during the relevant time period.  DCS contends that the two child support payments Father made after the termination petition was filed are evidence that he had the capacity to pay.  Likewise, the guardian ad litem contends that Father's employment during the dependency and neglect proceedings is evidence that he had the capacity to pay.  The evidence they cite, however, is not relevant to Father's capacity to pay child support during the relevant four-month period; it is only useful in determining Father's capacity at points either before or after the relevant time period.  There is no evidence in the record of Father's income, expenses, assets, debts, or ability to pay during the four-month period immediately preceding the date that the termination petition was filed.  As such, we must conclude that DCS failed to present evidence sufficient to eliminate any

---

[6] Father made child support payments of $50 on May 8, 2015 and May 27, 2015.

serious or substantial doubt about whether Father's failure to support Jimmy was willful. Because the evidence preponderates against the juvenile court's conclusion that DCS established, by clear and convincing evidence, that Father abandoned Jimmy by willfully failing to support him, we reverse the juvenile court's order as to this ground.

Although we have concluded that the record does not support termination of Father's parental rights based on the ground of abandonment by willful failure to support, only one of the statutory grounds must be proven for termination of parental rights. *In re Valentine*, 79 S.W.3d at 546. We therefore proceed to consider the other grounds asserted.

### *Severe Child Abuse*

The fourth ground for termination listed in the termination statute is severe child abuse. Tenn. Code Ann. § 36-1-113(g)(4). The statute provides that a court may terminate parental rights when:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian.

Tenn. Code Ann. § 36-1-113(g)(4). In relevant part, Tennessee Code Annotated section 37-1-102 defines "severe child abuse" as:

> The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death.

Tenn. Code Ann. § 37-1-102(b)(21)(A)(i). When a juvenile court makes a finding at the dependency and neglect stage that a parent has committed severe child abuse, the doctrine of res judicata may apply to prevent the parent from re-litigating the issue in a later termination of parental rights proceeding. *In re Dakota C.R.*, 404 S.W.3d 484, 497 (Tenn. 2012); *see generally Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) ("The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit.").

The juvenile court made the following findings in its order with regard to Father's severe child abuse of Jimmy:

> As has already been stated, this Honorable Court made a finding of severe abuse by clear and convincing evidence as part of the Adjudicatory Order in the dependency and neglect proceeding on December 10, 2014. That Adjudicatory Order was adverse to both parents and neither appealed. The Department entered a copy of that Adjudicatory Order as an exhibit in this *termination of parental rights hearing*. Considering the actions to which both parents subjected this child, this little boy is lucky to be alive. By clear and convincing evidence, the requirements of Tenn. Code § 36-1-113(g)(4) and 37-1-102(b)(23) have been met.

On appeal, Father contends that the juvenile court's dependency and neglect order should not be given preclusive effect in these proceedings because he was not present at the December 10, 2014 hearing and the record does not reflect whether his absence was justified. Father argues that by proceeding with the December 10, 2014 hearing without determining Father's whereabouts, the juvenile court prejudiced his constitutional and statutory rights. In support of his argument, Father relies on this Court's opinion in *In Cameron S.H.*, No. E2012-00220-COA-R3-PT, 2012 WL 4045303 (Tenn. Ct. App. Sept. 14, 2012). *In re Cameron S.H.* is readily distinguishable from this case, however, because in that case, the parent's attorney was not served with the termination petition or notified of the termination proceedings and, therefore, did not appear at the termination hearing. *Id.* at *3. This Court ruled on appeal that the failure to notify counsel of the proceedings affected the parent's substantial constitutional and statutory rights and that substantial justice required granting the parent a new trial. *Id.* In this case, however, Father and his attorney were both notified of the dependency and neglect proceedings. Father's attorney appeared at the hearing on his behalf. Thus, Father's failure to appear at the hearing, despite being served with notice of it, did not prejudice his rights. Moreover, any challenge to the December 10, 2014 order, which was a final judgment in the dependency and neglect proceedings, should have been brought by direct appeal. *See In re M.J.B.*, 140 S.W.3d at 651 ("Final orders in dependency-neglect cases are immediately appealable[.]"). This appeal was taken from the termination of parental rights proceedings, which was a new and separate proceeding. *Id.* ("A termination of parental rights proceeding is not simply a continuation of a dependent-neglect proceeding."). Accordingly, the juvenile court's finding of severe child abuse in the December 10, 2014 order is not subject to collateral attack in this appeal. Father's argument is without merit. We are satisfied that clear and convincing evidence supports the juvenile court's decision to terminate Father's parental rights based on this ground.

*Persistence of Conditions*

The juvenile court also relied on Tennessee Code Annotated section 36-1-113(g)(3) as a ground for terminating Father's parental rights. This ground for termination, commonly referred to as "persistence of conditions," applies when:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;
>
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and
>
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. § 36-1-113(g)(3). The purpose behind this ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re Dakota C.R.*, 404 S.W.3d at 499. It is focused on the results of the parent's efforts to improve rather than the mere fact that he or she has made them. *In re Audrey S.*, 182 S.W.3d at 874. Therefore, a parent's failure to remedy the conditions that led to the child's removal need not be willful to support termination. *In re Dakota C.R.*, 404 S.W.3d at 499.

There is no dispute that Jimmy was removed from the home more than six months prior to the initiation of termination proceedings. Father argues, however, that the record does not contain clear and convincing evidence that the conditions that led to Jimmy's removal still persist and would, in all reasonable probability, subject him to further abuse and neglect. Having thoroughly reviewed the record, we agree.

In its order, the juvenile court made the following findings on the ground of persistence of conditions as it relates to Father:

The Court finds by clear and convincing evidence that there is a persistence of conditions on this matter, namely, the parents' continuing substance abuse. The adjudicatory order reflects a problem with drug abuse. The record is replete with the evidence which would show that the issues that this child has been subjected to since he was first placed in someone else's custody have continued and continue today. . . . According to the record, father has made zero progress toward resolving his drug addiction. . . . By clear and convincing evidence, the requirements of Tenn. Code § 36-1-113(g)(3) have been met.

Contrary to the juvenile court's assertion, however, there is little if any evidence in the record to indicate that Father was continuing to abuse drugs during the termination proceedings. Although Father pled guilty to possession of drug paraphernalia following a December 2014 arrest and violated the terms of his probation by failing to submit to a drug screen in May 2015, there is no evidence in the record to suggest that Father has continued using drugs. To the contrary, Mother testified that Father was attending intensive outpatient classes to resolve his drug use. In our view, the record does not contain evidence sufficient to eliminate any serious or substantial doubt about whether Father's substance abuse persisted at the time the termination proceedings were initiated.

DCS and Jimmy's guardian ad litem contend that Father should not be permitted to benefit from his lack of participation in the termination proceedings. Indeed, it appears in this case that Father's failure to show up consistently for visits, drug screens, and court hearings or to communicate effectively with DCS workers made it difficult for DCS to obtain clear and convincing evidence that the conditions that led to Jimmy's removal still persist. However, that is the burden of proof that must be met by a party seeking to terminate parental rights based on this statutory ground, regardless of how difficult it may be in some circumstances.[7] DCS failed to do so here. Accordingly, we hold that the juvenile court's termination of Father's parental rights based on the ground of persistence of conditions is not supported by clear and convincing evidence.

Although we have concluded that two of the three statutory grounds relied on by the juvenile court in terminating Father's parental rights were not supported by clear and

---

[7] As the guardian ad litem in this case points out, we recognize that obtaining clear and convincing evidence of persistent conditions may be extremely difficult in cases where a parent does not cooperate with DCS or participate in termination proceedings. We also recognize, however, that a parent's failure to cooperate or participate in such a manner may constitute grounds for termination under an alternative statutory provision, such as substantial noncompliance with permanency plans, which often overlaps factually with persistence of conditions but requires the parent to take affirmative actions to avoid termination. *See* Tenn. Code Ann. § 36-1-113(g)(2). We are therefore confident that our ruling will not encourage parents to engage in nonparticipation as a strategy to avoid termination.

convincing evidence, DCS was only required to prove the existence of one of the statutory grounds in order to terminate Father's parental rights. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Because we have concluded that the juvenile court did not err in concluding that DCS had proven severe child abuse by clear and convincing evidence, we proceed with our review of whether it was in Jimmy's best interests that Father's parental rights be terminated.

## BEST INTERESTS

As we explained previously, once at least one of the statutory grounds for termination of parental rights has been established, the petitioner must then prove by clear and convincing evidence that termination of the parent's rights is in the child's best interests. Tenn. Code Ann. § 36-1-113(c)(2); *In re Angela E.*, 303 S.W.3d at 251. Once the court has determined that the parent is unfit based on clear and convincing evidence that one or more of the grounds for termination exists, the interests of the parent and child diverge, and the interests of the child become the court's paramount consideration. *In re Audrey S.*, 182 S.W.3d at 877. Because not all parental conduct is irredeemable, the statutes governing termination of parental rights in Tennessee recognize that terminating the parental rights of an unfit parent will not always serve the best interests of the child. *Id.* If the interests of the parent and the child conflict, however, the court must always resolve the conflict in favor of the rights and best interests of the child. Tenn. Code Ann. § 36-1-101(d). Tennessee Code Annotated section 36-1-113(i) sets forth the following list of factors to be considered when
determining a child's best interests in a termination of parental rights case:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Although courts should consider the factors listed in Section 36-1-113(i) to the extent that they are relevant to the particular facts and circumstances of the case, the list is "not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d at 667. Depending on the circumstances of the case, the consideration of a single factor, or of facts outside the statutory factors, may dictate the outcome of the court's analysis. *In re Audrey S.*, 182 S.W.3d at 878.

The juvenile court found that the first statutory factor in particular, whether the parent has made an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent, weighed strongly in favor of termination. The court found that Father had failed to visit or support Jimmy, had severely abused him, and had no home to provide him. Additionally, the court found that Jimmy had been in a loving and stable foster home for the past year where he appeared to be thriving.

The evidence presented at trial supports the juvenile court's findings. The record clearly reflects that Father has lacked stable housing and has a history of drug abuse. Although the record contains little evidence concerning Father's current circumstances, we certainly cannot presume that he has made meaningful improvements in those areas. Father has shown a flagrant disregard for Jimmy's well-being in the past and has failed to support him financially. Conversely, the record reflects that Jimmy has a strong bond with his foster family. His foster mother testified that Jimmy refers to her and her husband as "Mamaw" and "Papaw." The DCS caseworker assigned to his case testified that Jimmy was very happy in the foster parent's home. Jimmy's foster mother testified that, although she and her husband would be willing to adopt Jimmy, another family had also expressed interest in adopting him. Father contends that the juvenile court's best interest finding is not supported by clear and convincing evidence because there is no evidence as to the suitability of the other potential adoptive family. While the court should consider all relevant circumstances in making a best interest determination, it is our view that the suitability of potential adoptive families is not a pressing consideration in this case given that no petition for adoption has been filed. We are satisfied that the record in this case contains clear and convincing evidence that terminating Father's parental rights is in Jimmy's best interests.

## IV. CONCLUSION

For the foregoing reasons, we affirm the decision of the juvenile court to terminate Jimmy B.'s parental rights. Costs of this appeal are taxed to the appellant, Jimmy B. Because Jimmy B. is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
ARNOLD B. GOLDIN, JUDGE